+

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA D. RICE,<br><br>       Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | No.  2:15-cv-1763 DB<br><br><br><u>ORDER</u> |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded with instructions to award benefits.

PROCEDURAL BACKGROUND

In May of 2012, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on July 8, 2011. (Transcript ("Tr.") at 19, 222-28.) Plaintiff's application was denied initially, (<u>id.</u> at 113-15), and

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  (<u>See</u> ECF Nos. 5 & 6.)

upon reconsideration.  (Id. at 124-29.)  Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on October 31, 2014.  (Id. at 35-83.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 35-36.)

In a decision issued on November 21, 2014, the ALJ found that plaintiff was not disabled.  (Id. at 30.)   The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since July 8, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: depressive disorder and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is capable of simple and repetitive tasks. The claimant is capable of occasional detailed tasks which are at a semi-skilled level but not complex tasks.  She is capable of non-public work, with only occasional interactions with coworkers and supervisors.  The claimant needs work that is independent, which means not coordinating or depending on others for completion of tasks.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on June 1, 1957 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can

perform (20 CFR 404.1569 and 404.1569(a)).

    11. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 21-30.)

On June 22, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's November 21, 2014 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 20, 2015. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

////

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of plaintiff's subjective testimony constituted error. (Pl.'s MSJ (ECF No. 10) at 14-25.[2])

### I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A. Dr. David Dahnke**

Here, plaintiff argues that the ALJ erred in rejecting the opinion of Dr. David Dahnke, plaintiff's treating physician. (Pl.'s MSJ (ECF No. 10) at 16-20.) In this regard, on May 2, 2012, Dr. Dahnke opined that "[a]t this point" he recommended "permanent total disability as prospects for employment" that plaintiff could perform "appear dim." (Tr. at 357.) On January 28, 2015, Dr. Dahnke also completed a "Mental Impairment Questionnaire," in which he found that plaintiff was moderately to markedly limited in several areas of functioning and would be absent from work as a result of her impairments more than three times per month.[3] (Id. at 500-04.)

The ALJ, however, afforded Dr. Dahnke's opinion "little weight." (Id. at 28.) In this regard, the ALJ noted that Dr. Dahnke had "initially provided that the claimant can return to a different line of work than her previous employment." (Id.) The citation provided by the ALJ to support this assertion, however, reflects that Dr. Dahnke actually "[e]ncourage[d]" plaintiff to "continue to look for [a] different line of work," because she was "not able to return to [her] prior

---

[3] Although the ALJ's November 21, 2014 decision was issued prior to Dr. Dahnke's January 28, 2015 questionnaire, the questionnaire was considered by the Appeals Council. (Tr. at 4.) As acknowledged by the Commissioner, (Def.'s MSJ (ECF No. 11) at 8), "[w]hen, as here, 'the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court . . . must consider when reviewing the [Commissioner's] final decision for substantial evidence.'" Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)).

type of work." (Id. at 377.)

The ALJ also found that there was "no explanation" for Dr. Dahnke's "drastic change in his opinion and [that] his examination findings have remained the same throughout this period." (Id. at 28.) The evidence referred to by the ALJ, however, shows that Dr. Dahnke repeatedly examined plaintiff and found that she suffered from "Major depression" and "Anxiety disorder." (Id. at 357, 359.)

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

The ALJ also rejected Dr. Dahnke's opinion because it was "inconsistent with the claimant's good activities of daily living." (Tr. at 28.) However, as will be explained below in addressing plaintiff's challenge to the ALJ's treatment of plaintiff's testimony, the court finds that this is not a legitimate reason supported by substantial evidence.

**B. Dr. Chester Sunde**

Plaintiff also challenges the ALJ's treatment of the opinion of Dr. Chester Sunde. (Pl.'s MSJ (ECF No. 10) at 20-22.) In this regard, on August 14, 2013, Dr. Sunde examined plaintiff and completed a "comprehensive psychiatric evaluation." (Tr. at 464-67.) The ALJ decisions discussed Dr. Sunde's opinion, noting that Dr. Sunde found plaintiff's impairment to be "moderate-to-marked" in several areas of functioning. (Id. at 28.) The ALJ, however, afforded Dr. Sunde's opinion "little weight" because it was "overly restrictive in light of the claimant's conservative treatment, lack of substantial counseling" and her "good activities of daily living." (Id. at 28.)

As noted above, the ALJ's finding with respect to plaintiff's purported good activities of

6

daily living is not a legitimate reason supported by substantial evidence for the reasons explained below. Moreover, the Ninth Circuit has:

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)); see also Garrison v. Colvin, 759 F.3d 995, 1018 fn 24 (9th Cir. 2014) ("In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

### C. Dr. Les Kalman

Next, plaintiff challenges the ALJ's treatment of the opinion of Dr. Les Kalman. (Pl.'s MSJ (ECF No. 10) at 22-23.) In this regard, Dr. Kalman examined plaintiff on June 8, 2014, and provided a "Psychiatric Evaluation," (Tr. at 469-72), and a "Mental Impairment Questionnaire." (Id. at 473-77.) Dr. Kalman opined, in relevant part, that plaintiff was moderately, moderately-to-markedly, and markedly limited in most of her areas of mental functioning. (Id. at 476.) Dr. Kalman also opined that plaintiff would be absent from work three or more times per month as a result of her impairments. (Id. at 477.)

While the ALJ afforded "great weight" to the portion of Dr. Kalman's opinion that was consistent with the ALJ's residual functional capacity determination, the ALJ afforded only "reduced weight" to the remainder of Dr. Kalman's opinion "because it is overly restrictive and inconsistent with the claimant's treatment record and mental status examination." (Id. at 27.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Alatorre v. Astrue, No. CV 12-0746 SS, 2013 WL 424727, at *8 (C.D. Cal. Feb.1, 2013) (the ALJ's finding that a medical

7

opinion was "too restrictive" and not supported by "social security rules and regulations" constituted "mere conclusions, with no citation to record evidence" and thus were not "specific or legitimate reasons for rejecting" the opinion).  In this regard, an ALJ errs by assigning a medical opinion "little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  Garrison, 759 F.3d at 1012-13.

The ALJ also assigned little weight to Dr. Kalman's opinion because he examined plaintiff "only once and provided limitations that retroactively apply to the claimant's alleged onset date of July 2011."  (Tr. at 27.)  Examining physicians, however, typically examine the claimant on only one occasion.  Moreover, the ALJ cited no evidence to support questioning Dr. Kalman's retroactive application of plaintiff's limitations.

Accordingly, plaintiff is entitled to summary judgment on her claim that the ALJ's treatment of the medical opinion evidence constituted error.

**D.  Plaintiff's Medical Treatment**

Finally, the ALJ failed to explain or support the assertion that plaintiff's treatment has been conservative.  (Tr. at 28.)  The record reflects that plaintiff's treatment has included medications such as Fluoxetine (Prozac), Citalopram (Celexa), Alprazolam (Xanax), Prazosin (Minipress)[4], Risperidone (Risperdal), and Venlafaxine (Effexor).  (Tr. at 372, 394, 442 and 450.)

It is entirely unclear to the court how treatment with such medications could be characterized as conservative.  See Garcia v. Colvin, Case No. CV 14-0092-AS, 2015 WL 4450901, at *3 (C.D. Cal. July 20, 2015) ("The ALJ erred in finding Plaintiff's treatment conservative because . . . Xanax prescriptions are not considered conservative treatment."); Carden v. Colvin, No. CV 13-3856-E, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) ("Courts specifically have recognized that the prescription of several of these medications connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence."); Baker v. Astrue, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter

---

[4] "Prazosin can be used to treat sleep problems associated with post-traumatic stress disorder." Ramo v. Colvin, Civil No. 13-1233 (JRT/JJK), 2014 WL 896729, at *5 (D. Minn. 2014).

behavior shows anything but conservative treatment.").

## II.   Plaintiff's Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error when the ALJ found that plaintiff's testimony was not entirely credible.  (Pl.'s MSJ (ECF No. 10) at 23-25.)  This court concurs.

### A.  Legal Standard

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "The clear and convincing standard is the most demanding required in Social Security cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

**B. Analysis**

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely credible. (Tr. at 26.) In this regard, the ALJ found that plaintiff "engaged in activities consistent with an ability to perform simple and repetitive tasks as well as detailed, noncomplex tasks." (Id. at 26.) Specifically, the ALJ noted that plaintiff "plays solitaire," "generally takes her medication on time," "can perform standard household chores," and "takes care of her grandson once a week, without any help." (Id.) The ALJ found that "[t]hese activities of daily living provide that the claimant is not as limited as she alleges," and, therefore, plaintiff's allegations were afforded "reduced weight."[5] (Id.)

The Ninth Circuit, "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). In general, the Commissioner does not consider "activities like

---

[5] Buried within this arguments, the ALJ states that plaintiff's "mental status examinations do not indicate significant cognitive or memory deficits." (Tr. at 26.) "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment]." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue.")

10

taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold for transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn, 495 F.3d at 639 ).

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ also discredited plaintiff's testimony because after her alleged onset date, plaintiff attempted to find work, but "failed for reasons unrelated to her mental impairments . . . ." (Tr. at 26.) However, that plaintiff applied for work but was not hired for reasons unrelated to her impairment does not support the ALJ's finding that plaintiff is "capable of performing some work." (Id.) "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The final reason offered by the ALJ for discrediting plaintiff's testimony was plaintiff's "continued noncompliance with prescribed treatment, evidenced by her refusal to take the recommended dosage of antidepressants and recommended frequency of counseling session . . . ." (Tr. at 26.) As noted above, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Nguyen, 100 F.3d at 1465 (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (9th Cir. 1989)). Moreover, plaintiff indicated that she does not attend more frequent counseling sessions due to "financial concerns." (Tr. at 313.) The Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." Regennitter, 166 F.3d at 1297 (citing Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995)).

Accordingly, the court finds that plaintiff is also entitled to summarize judgment with

respect to her claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, further administrative proceedings would serve no useful purpose. The record has been fully developed and leaves no doubt that claimant is, in fact, disabled within the meaning of the Social Security Act. In this regard, the ALJ's opinion failed to provide a legally sufficient reason for rejecting the medical opinions of plaintiff's treating physician and two examining physicians.[6] The ALJ's decision also failed to provide a specific and legitimate reason for rejecting plaintiff's subjective testimony. This evidence, taken individually or in total, establishes

---

[6] The only medical opinions the ALJ did not discredit were those of the nonexamining state agency physicians. (Tr. at 27.) "In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion." Lester, 81 F.3d at 832.

that plaintiff is disabled based on the testimony of the Vocational Expert at the October 31, 2014 hearing. (Tr. at 76-83.)

Accordingly, this matter will be remanded for the immediate payment of benefits. See Peterson v. Colvin, 2016 WL 4410079, at *1 (9th Cir. 2016) ("the testimony of the vocational expert establishes that, crediting Dr. Bormann's opinion, Peterson could not perform jobs existing in significant numbers in the national economy. Because 'the ALJ would necessarily have to conclude' that Peterson is disabled, we exercise our discretion to remand with instructions that the district court remand to the Commissioner for payment of benefits."); Trnavsky v. Colvin, 636 Fed. Appx. 390, 393 (9th Cir. 2016) ("Because this evidence established that Trnavsky's impairments would rule out competitive employment, the district court did not abuse its discretion in finding that the evidence compelled a finding of disability."); cf. Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (ECF No. 10) is granted;

    2. Defendant's motion for summary judgment (ECF No. 11) is denied;

    3. The Commissioner's decision is reversed; and

    4. This matter is remanded with instructions to award benefits.

Dated: January 9, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DLB1\orders.soc sec\rice1763.ord